## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| SUPER 8 MOTELS, INC., a South : | |
| Dakota Corporation, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| : CIVIL ACTION NO. 05-5713 (JCL) | |
| B AND J (RADHA), LLC, : | |
| SURESH DAYAL, and individual; : | |
| BHANU DAYAL, an individual, : **OPINION** | |
| : | |
| Defendants. : | |
| _____ : | |

### LIFLAND, District Judge

Plaintiff Super 8 Motels, Inc. ("SMI" or "Plaintiff") moves for final

judgment by default, pursuant to Federal Rule of Civil Procedure ("Rule")

55(b)(2), against B and J (Radha), LLC ("B&J"), Suresh Dayal ("S. Dayal"), and

Bhanu Dayal ("B. Dayal"), (collectively, "Defendants") for breach of a franchise

licensing agreement ("Franchise Agreement") and for violations of the Lanham

Act.  For the reasons stated herein, SMI's motion will be granted in whole as to

liability, and in part as to damages.

I.   **Background**

SMI, a South Dakota corporation with its principal place of business in Parsippany, New Jersey, is a franchisor of guest lodging facilities.  (Compl. ¶¶ 1, 11.)  B&J is a limited liability company existing under the laws of Alabama.  (Id. ¶ 2.)  S. Dayal and B. Dayal are citizens of Alabama.  (Id. ¶¶ 3-4.)  Subject matter jurisdiction over this action is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  The Court has personal jurisdiction over all Defendants pursuant to the Franchise Agreement, wherein they consented to the "non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey."  (Id. ¶¶ 8-9, Ex. A, § 17.4, Ex. B.)

On August 30, 2000, SMI entered into the Franchise Agreement with B&J for the operation of a 142-room guest lodging facility located at 1813 Crestwood Boulevard, Birmingham, Alabama, site no. 10044 (the "Facility").  (Id. ¶ 20.)  B&J was obligated to operate the Facility as a Super 8 guest lodging facility for twenty years, during which time B&J was permitted to use the Super 8 marks[1] in association with its operation of the Facility as part of SMI's franchise system.

_____

[1] The SMI guest lodging facility franchise system is comprised of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos and derivations thereof (the "Super 8 marks").  (Aff. of Valerie Capers Workman in Supp. of Motion for Default J. ("Workman Aff.") ¶ 3.)

2

(Id. ¶ 21.)  According to the Franchise Agreement, B&J agreed that the Facility would comply with SMI's "System Standards," and would achieve and maintain certain scores on periodic quality assurance inspections conducted by SMI.  (Id. ¶¶ 22-24, Ex. A. § 3.)  Furthermore, B&J agreed to make certain periodic payments to SMI for royalties, taxes, interest, reservation system user fees, and other fees (collectively, "recurring fees"), and to accurately report to SMI its monthly gross revenue for the purpose of determining the amount of recurring fees due to SMI. (Id. ¶¶ 25-27, Ex. A §§ 7 and 3.9.)  Failure to "pay [SMI] when a payment is due, [or failure to] perform any . . . other obligations when [the Franchise] Agreement and the System Standards Manual require" constitutes a "default" under the Franchise Agreement.  (Id., Ex. A. § 11.1.)

Under section 11.2 of the Franchise Agreement, SMI had the right to terminate the license if, inter alia, B&J (a) failed to pay any amount due to SMI under the Franchise Agreement, (b) failed to remedy any other defaults of its obligations under the Franchise Agreement within 30 days of receiving written notice from SMI of such defaults, or (c) received two or more notices of default in a one-year period, regardless of whether B&J cured such defaults.  (Id. ¶ 28, Ex. A.)  Termination of the Franchise Agreement under section 11.2 obligated B&J to pay liquidated damages to SMI.  (Id. ¶ 29, Ex. A §§ 12.1.)   The individually

named Defendants provided SMI with a Guaranty of B&J's obligations under the Franchise Agreement, whereby they agreed to "immediately make each payment and perform or cause Franchisee to perform, each unpaid or underperformed obligation of Franchisee under the [Franchise] Agreement" upon a default by B&J. (Id. ¶¶ 33-34., Ex. B.)

In a letter dated August 9, 2001, SMI informed B&J that the Facility failed a July 31, 2001 quality assurance inspection, and advised B&J that it was in default under the Franchise Agreement.  (Id. ¶ 37, Ex. C.)  The letter further informed B&J that the default could be cured by submitting a written plan to SMI on how it would improve the Facility to bring it into compliance with SMI standards, but that if B&J failed to submit a plan, or if that plan was not approved by SMI, then the Franchise Agreement might be subject to termination.  (Id.)

In a letter dated October 23, 2001, SMI informed B&J that it failed a second quality assurance inspection, conducted on October 16, 2001, that B&J was in continuing default, and that the Franchise Agreement was subject to immediate termination.  (Id. ¶ 38, Ex. D.)

In a letter dated November 15, 2001, SMI informed B&J that it had until November 30, 2001 to submit an acceptable improvement plan to SMI to address the Facility's quality assurance deficiencies, and that B&J's failure to do so might

4

cause the Franchise Agreement to be terminated.  (Id. ¶ 39, Ex. E.)  B&J failed to submit an acceptable improvement plan by November 30, 2001.  (Id. ¶ 40.)

In a letter dated July 22, 2002, SMI informed B&J that it failed another quality assurance inspection, conducted on June 24, 2002, that it was in continuing default, and that the Franchise Agreement was subject to immediate termination.  (Id. ¶ 41, Ex. F.)

In a letter dated November 19, 2002, SMI informed B&J that it failed another quality assurance inspection, conducted on August 27, 2002.  (Id. ¶ 42, Ex. G.)  By letter dated January 17, 2003, SMI again notified B&J that it was in default under the Franchise Agreement and that it had until March 17, 2003 to cure, or else the Franchise Agreement would be terminated on April 1, 2003.  (Id. ¶ 43, Ex. H.)

In a letter dated April 29, 2003, SMI notified B&J that SMI terminated the Franchise Agreement, effective April 29, 2003, due to B&J's failure to meet SMI's required quality standards.  (Id. ¶ 44, Ex. I.)  The letter further informed B&J that all items at the Facility displaying the Super 8 marks must be removed within 14 days.  (Id.)  The letter also demanded immediate payment of past-due recurring fees, and liquidated damages of $284,000.00.  (Id.)

Defendants continued to use the Super 8 marks to rent rooms to the public

through at least June 1, 2005. (Id. ¶¶ 47-48, 51.)  In letters dated June 3, 2004, August 18, 2004, September 8, 2004, and March 15, 2005, SMI again requested that B&J remove all Super 8 marks from the Facility.  (Id. ¶ 49, Ex. J, K.)  SMI conducted a post-termination inspection demonstrating that B&J was still infringing its trademarks as of June 1, 2005.  (Workman Aff. ¶ 36, Ex. A.)

Plaintiff filed this action on December 7, 2005.  In count one, SMI alleges that Defendants violated sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)[2] and 1125(a).[3]  Count two requests disgorgement of profits and restitution.  Count three claims Defendants breached the Franchise Agreement and demands $2,330.45 in damages for expenses incurred in hiring an independent

---

[2] Section 1114(1)(a) provides in pertinent part:
Any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .

[3] Section 1125(a) provides in pertinent part:
Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . .

6

contractor to remove Super 8 marks from the Facility.  Count four seeks

$284,000.00 in liquidated damages under the Franchise Agreement.  In the

alternative, SMI seeks actual damages resulting from the termination of the

Franchise Agreement in count five.  Finally, count six seeks to recoup all of the

above monies from the individual Defendants as B&J's Guarantors under the

Franchise Agreement.

The record indicates that B&J, S. Dayal and B. Dayal were properly served

with process on March 16, 2006.  (Affidavit of Lisa M. Ackerly, Esq. in Supp't of

Mot. for Default J. ("Ackerly Aff.") ¶¶ 4-6, Exs. A, B, and C.)  Defendants failed

to answer or otherwise plead with respect to the Complaint as required by Rule

12(a).  On April 14, 2006, SMI petitioned the Clerk of the Court for an entry of

default against Defendants pursuant to Rule 55(a).  On April 21, 2006, the Clerk

of the Court entered Default against Defendants for failure to appear.  On August

18, 2006, Plaintiff submitted the instant motion, seeking default judgment against

Defendants.  The record indicates that SMI served Defendants with notice of its

motion.

## II.    Discussion

### A.    Default Judgment

7

### i.     <u>Standard of Review</u>

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment.  The party against whom default judgment is requested must have been properly served with process.  Fed. R. Civ. P. 55(b)(2); <u>Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc.</u>, No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before a default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Rule 55(a); <u>see</u> <u>Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.</u>, 4 F.3d 1209, 1226 (3d Cir. 1993); 10A Wright, Miller, & Kane, <u>Federal Practice and Procedure</u>, § 2682, at 13 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, however, even where the defendant was served with process, and where the default has been noted pursuant to Rule 55(a).  <u>See, e.g.</u>, <u>Local Union No. 98, IBEW v. Cableco, Inc.</u>, No. 99-0755, 1999 U.S. Dist. LEXIS 7024, at *3 (E.D. Pa. Apr. 28, 1999) (citing <u>Petrucelli v. Bohringer & Ratzinger</u>, 46 F.3d 1298, 1303 (3d Cir. 1995)).  Rather, a court is "required to exercise sound judicial discretion in deciding whether to . . . enter default judgment." <u>Id.</u>  Default judgment is generally disfavored because it prevents resolution of a plaintiff's claims on the merits.  <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1181 (3d Cir. 1984).  Thus, when

considering a motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default.  Franklin v. Nat'l Maritime Union of Am., No. 91-0480, 1991 U.S. Dist. LEXIS 9819, at *1 (D.N.J. July 16, 1991) (citing 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).

        "A default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citing Fed. R. Civ. P. 55(b)(2)).

> **ii.    SMI is Entitled to Default Judgment on Defendants' Liability**

        Here, the record indicates that Plaintiff effectuated service of process on Defendants.  Default was entered by the Clerk.  Furthermore, although notice of the instant motion is not required in order to enter a default judgment under Rule

55(b)(2), the record indicates that Defendants were served with notice of the instant motion for default judgment and with supporting documents on or about October 21, 2005, via overnight delivery.  Thus, the Court is satisfied that Defendants had ample notice of the Complaint and of the instant motion for default judgment and chose not to respond.

Accordingly, the Court will treat the allegations as to liability in the complaint as true and admitted by Defendants.  Under section 11.2 of the Franchise Agreement, SMI could terminate the agreement, with notice to Defendants, for, inter alia, Defendants' failure to ensure the Facility passed SMI's quality assurance inspections.  Because Defendants repeatedly failed to do so, SMI, with notice to Defendants, rightfully terminated the Franchise Agreement.  Plaintiff has established grounds for Defendants' liability for breach of the Franchise Agreement.

SMI has also established violations of sections 32 and 43(a) of the Lanham Act.  A violation of section 43(a) of the Lanham Act is established if Defendants' use of the Super 8 marks is "likely to create confusion concerning the origin of the goods or services."  S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 375 (3d Cir. 1992) (citing Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990)).  To prevail on an infringement claim

10

under section 32 of the Act, SMI must demonstrate as well that Defendants' use of the marks was unauthorized.  Id. (citing United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981)).

The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff.  Opticians, 920 F.2d at 195 (citing Jaycees, 639 F.2d at 142).  SMI and Defendants are using the same legally protectable trademark, owned by SMI.  There is, therefore, no question that their concurrent use is highly likely to cause consumer confusion about Defendants' affiliation with SMI.  SMI has thus shown a violation of section 43(a).

It is also apparent that Defendants' continued use of the trademark was unauthorized, in violation of section 32.  See 15 U.S.C. § 1114(1)(a) (holding liable "[a]ny person who shall, without the consent of the registrant--(a) use in commerce any reproduction . . . of a registered mark . . . in connection with which such use is likely to cause confusion."); ITT Industries, Inc. v. Wastecorp, Inc., 87 F. App'x. 287, 293 (3d Cir. Feb. 6, 2004) ("The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public.  It has been described as a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor.").  SMI formally terminated the License

11

Agreement on April 29, 2003, rendering any subsequent use of the Super 8 marks by Defendants violative of section 32.  Defendants continued to use those marks until at least June 1, 2005.  Thus, SMI has shown a violation of section 32.

The public concern for enforcing the Lanham Act and contracts, such this one, weighs in favor of entering default judgment in this matter.  The failure to enter a default judgment would prejudice SMI in its ability to enforce its rights under the Lanham Act and the Franchise Agreement.  There is no evidence that Defendants' failure to answer the summons and Complaint in this matter or to respond to the motion for default judgment may be attributed to a good-faith explanation, mistake, or excusable neglect.  After reviewing Plaintiff's Complaint and the affidavits of Lisa M. Ackerly and Valerie Capers Workman in support of the motion for default judgment, the Court is satisfied that Plaintiff has sufficiently established the factors necessary to warrant entry of a default judgment for breach of the Franchise Agreement and for violation of sections 32 and 43(a) of the Lanham Act.

**B.    Damages**

i.    **Standard of Review**

The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of

12

damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Under

Rule 55(b)(2) a district court "may conduct such hearings or order such references

as it deems necessary and proper" in order "to determine the amount of damages."

There are certain limited situations, however, where a district court can enter a

final judgment without requiring further evidence of damages.  KPS Assocs., Inc.

v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).

First, if the damages are for a "sum certain or for a sum which can by

computation be made certain," a further evidentiary inquiry is not necessary.  Fed.

R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, 908 F.2d at 1149.  A

claim for damages is not a "sum certain unless there is no doubt as to the amount

to which a plaintiff is entitled as a result of the defendant's default."  KPS Assocs.,

318 F.3d at 19.  "Such situations include actions on money judgments, negotiable

instruments, or similar actions where the damages sought can be determined

without resort to extrinsic proof."  Id. at 19-20 (internal quotations omitted).

Second, claims for liquidated damages also do not require further

evidentiary inquiry.  Id. at 20 (citing 46 Am. Jur. 2d Judgments § 313).  Typically,

liquidated damages are those either agreed upon by the parties in a contract, or

fixed by operation of law.  Id.

Even when faced with claims for either uncertain or unliquidated damages,

13

a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the "'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" Id. at 21 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

### ii. SMI's Entitlement to Damages

Here, SMI seeks a combination of liquidated and unliquidated (and uncertain) damages from Defendants.  (Workman Aff. ¶¶ 37-43.)  Specifically, it seeks liquidated damages, costs of removing Super 8 marks from the Facility, pre-judgment interest on both the liquidated damages and the removal costs, infringement damages under the Lanham Act, and attorneys' fees and costs.[4]  The Court will address each in turn.

### a. Liquidated Damages

In the event of a termination of the Franchise Agreement under section 11.2, section 12.1 obligates Defendants to pay $284,000.00 in liquidated damages to

---

[4] SMI's request for relief in its instant default judgment motion differs somewhat from the relief sought in its Complaint.  The Court will rely on Plaintiff's renewed requests for relief in its instant motion.

SMI.[5]  (Workman. Aff. ¶ 14; Compl. ¶ 71, Ex. A.)  No further evidence is required

to substantiate this amount.  See KPS Assocs., 318 F.3d at 20.  Thus, the Court

will grant SMI default judgment in the amount of $284,000.00 in liquidated

damages.

b.    Pre-judgment Interest on Liquidated Damages

SMI asserts that it is entitled to $168,205.81 in pre-judgment interest on the

liquidated damages amount, calculated at a rate of 1.5 percent per month starting

May 29, 2003 (thirty days following the termination of the Franchise Agreement)

and continuing until the September 11, 2006 return date.  (Workman. Aff. ¶ 37.)

In addition, SMI seeks pre-judgment interest on the liquidated damages, at the

same rate, from the return date until the date of judgment.  (Id. ¶ 39.)  The

Franchise Agreement does not contain a provision requiring Defendants to pay

interest on liquidated damages.  Under New Jersey law[6] however, "the award of

---

[5] As provided in section 12.1 of the Franchise Agreement, this figure is the product of $2,000.00 multiplied by 142–the number of rooms Defendants were authorized to operate in the Facility at the time of termination.  (Compl., Ex. A.)

[6] Section 17.5 of the Franchise Agreement states that "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey." (Compl., Ex. A.)  "A contractual choice of law provision applies, with certain limitations, to issues that the parties 'could have resolved by an explicit provision' of the contract."  Berg Chilling Sys. v. Hull Corp., 435 F.3d 455, 465 (3d Cir. 2006) (citing Restatement (Second) of Conflicts of Law § 187(1)).  Because the application of pre-judgment interest to liquidated damages is an issue the parties

prejudgment interest for claims arising in contract is subject to the discretion of

the trial court." Cooper Distrib. Co. v. Amana Refrigeration, 62 F.3d 262, 284 (3d

Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063, 1070

(N.J. 1988)).  Pre-judgment interest can be awarded on either liquidated or

unliquidated damages, Geroge H. Swatek, Inc. v. North Star Graphics, Inc., 587

A.2d 629, 632 (N.J. Super. Ct. App. Div. 1991), in order "to indemnify the

claimant for the loss of what the moneys due him would presumably have earned

if the payment had not been delayed."  Id. (quoting Ellmex Constr. Co. Inc. v.

Republic Ins. Co. of Am., 323 A.2d 495, 512 (N.J. 1974)).  The "basic

consideration" in awarding pre-judgment interest

> is that the defendant has had the use, and the plaintiff has not, of the
> amount in question; and the interest factor simply covers the value of
> the sum awarded for the prejudgment period during which the
> defendant had the benefit of monies to which the plaintiff is found to
> have been earlier entitled.

County of Essex v. First Union Nat'l Bank, 891 A.2d 600, 608 (2006) (internal

quotations omitted).

Here, because SMI has been denied use of the $284,000.00 liquidated

damages amount since it became due, the Court is satisfied that awarding SMI pre-

---

could have resolved by provision in the Franchise Agreement, the Court will give
effect to the choice-of-law provision, and apply New Jersey law.

judgment interest is appropriate.  Thus, SMI is entitled to $168,200.05 in pre-judgment interest for the period from May 29, 2003 to the day before the September 11, 2006 return date,[7] and $8,262.95 for the period from September 11, 2006 to November 8, 2006, the date of judgment in this case.[8]  Accordingly, default judgment for pre-judgment interest on liquidated damages will be entered in the total amount of $176,463.00.

c.   <u>Removal Costs and Pre-Judgment Interest</u>

_____ SMI seeks $2,000.00 in costs it claims it incurred in hiring an independent contractor to remove all exterior Super 8 mark-bearing signage at the Facility. (Workman Aff., ¶ 38.)  However, SMI points to no evidence in the record substantiating this amount.  The conclusory allegation in the Workman Affidavit will not suffice.  The Court will require documentary evidence from SMI

---

[7] By the Court's calculations, Plaintiff's figure of $168,205.81 for pre-return date interest on the liquidated damages in incorrect.  The interest rate of 1.5 percent per month is equivalent to a rate of 18 percent per year.  Eighteen percent of the $284,000.00 liquidated damages amount is $51,120.00.  That amount divided by 365 days in a year, equals the amount of interest due per diem: approximately $140.05.  From May 29, 2003 to the day before the September 11, 2006 return date, 1,201 days elapsed.  The product of $140.05 multiplied by 1,201 days equals $168,200.05, not $168,205.81.  Thus, $168,200.05 is the amount of pre-judgment interest due for the period prior to the return date.

[8] From September 11, 2006 to, and including, the date of judgment, November 8, 2006, 59 days elapsed.  This number multiplied by the interest due per diem, $140.05, results in $8,262.95

demonstrating these costs.  Otherwise, the Court will schedule a Rule 55(b)(2)

damages hearing on the issue.

> d.    <u>Infringement Damages</u>

Section 35 of the Lanham Act allows a victorious Plaintiff to recover, <u>inter</u>

<u>alia</u>, "any damages sustained by the plaintiff."  15 U.S.C. § 1117(a).  Additionally,

a district court may, depending on the circumstances of the case, use its discretion

to treble the actual damage award.  <u>Id.</u>  To determine the amount of damages

sustained, some courts have used the amount of royalties the defendant would

have paid during the infringement period under the now-terminated licensing

agreement.  <u>See</u> <u>A&H Sportswear Co. v. Victoria's Secret Stores, Inc.</u>, 166 F.3d

197, 208-08 (3d Cir. 1999) (en banc) (citing, among others, <u>Howard Johnson Co.</u>

<u>v. Khimani</u>, 892 F.2d 1512, 1519-20 (11th Cir. 1990), and <u>Boston Prof'l Hockey</u>

<u>Ass'n v. Dallas Cap & Emblem Mfg. Inc.</u>, 597 F.2d 71, 75-76 (5th Cir. 1979)); <u>see</u>

<u>also</u> <u>Ramada Inns, Inc. v. Gadsden Motel Co.</u>, 804 F.2d 1562, 1565 (11th Cir.

1986) ("Royalties normally received for the use of a mark are the proper measure

of damages for misuse of those marks." (internal quotations omitted)).

SMI seeks $105,641.92 in damages for SMI's infringement from April 29,

2003 through June 1, 2005.  (Workman Aff. ¶ 43.)  SMI claims that its "records

indicate that for the period January 1, 2001 through April 24, 2003, B&J paid

average Recurring Fees of $4,225.68 per month," and that "[b]ased on that amount SMI estimates the amount of fees that would have been paid on gross room revenue earned at the Facility during the period of infringement in the amount of $105,641.92." (Id. ¶¶ 42-43.)  SMI offers no evidence to show that B&J did in fact pay an average of $4,225.68 in recurring fees per month from January 1, 2001 through April 24, 2003.  SMI's conclusory allegation is not sufficient.   The Court will require documentary evidence from SMI demonstrating these figures. Otherwise, the Court will schedule a Rule 55(b)(2) damages hearing on the issue.

e.      <u>Attorneys' Fees & Costs</u>

Although section 35 of the Lanham Act permits a plaintiff to recover costs, 15 U.S.C. § 1117(a), and section 17.4 of the Franchise Agreement requires the "non-prevailing party [to] pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement," (Compl., Ex. A.), SMI has failed to support its claim for attorneys' fees and costs.  The conclusory allegations in the Ackerly Affidavit will not suffice.  (<u>See</u> Ackerly Aff. ¶¶ 7-9.)  The Court will require descriptive time entries from counsel's billing records.[9]  Otherwise, the

---

[9] As requested by SMI, these documents will be subject to an <u>in camera</u> review to accommodate counsel's attorney-client privilege concerns.

Court will schedule a Rule 55(b)(2) damages hearing on the issue.

**III.    Conclusion**

In sum, the Court finds Defendants liable for breach of the Franchise Agreement and for violations of the Lanham Act, and will enter default judgment for Plaintiff in the amount of $460,463.00.[10]  As for SMI's requests for removal costs, pre-judgment interest on removal costs, Lanham Act damages, attorneys' fees, and costs, a damages hearing is appropriate under the circumstances, unless within 30 days SMI provides the necessary supplemental information referred to above.

/s/ John C. Lifland, U.S.D.J.

November 8, 2006

---

[10] This figure reflects the sum of $284,000.00 in liquidated damages, and $176,463.00 in pre-judgment interest on the liquidated damages.